# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## EASTERN DIVISION

| | |
|---|---|
| **PHILLIP HARRIS,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Case No.: 1:08-CV-1518-VEH** |
| | ) |
| **HOMECOMINGS FINANCIAL,** | ) |
| **LLC, and GMAC, LLC,** | ) |
| | ) |
| **Defendants.** | ) |

---

## MEMORANDUM OPINION

## I.     INTRODUCTION

Pending before the court is the Plaintiff's Motion to Remand (Doc. 5.)  The

parties have briefed the issues, (Docs. 5, 7, 8) and the Court has considered each of

the arguments.  For reasons discussed in this Memorandum Opinion, the Court finds

that the Motion to Remand is due to be **GRANTED**.

## II.    FACTUAL AND PROCEDURAL HISTORY

Phillip Harris ("Harris"), the Plaintiff, initiated this lawsuit against the

Defendants Homecomings Financial, L.L.C. ("Homecomings") and GMAC, L.L.C.

("GMAC") on February 1, 2008, in the Circuit Court of Talladega County, Alabama.

(Compl., Doc. 1, Ex. 1 at 1.)

As the Complaint alleges, Harris was hired by Homecomings, a subsidiary of GMAC, to perform restoration and repair work on damaged property on which Homecomings held a mortgage. (Compl., ¶¶ 17-20.)   Through agreement, Homecomings held the insurance proceeds in trust for the property owners and was scheduled to pay Harris for his work in three installments.   (Compl., ¶ 20.) Homecomings paid Harris the first two installments in a timely manner, but failed to pay him the third installation.  (Compl., ¶¶ 21, 26.)  Harris now claims that this third installment, an amount totaling $14,928.07, was improperly withheld. (Compl., ¶ 26.)

Harris's complaint consisted of eleven counts, ranging from breach of contract to fraud and breach of fiduciary duty. (Compl., ¶¶ 27-100.)  Harris did not specify an exact amount of damages, but instead requested relief in the form of compensatory and punitive damages in an amount "that a jury may feel his [sic] is entitled, plus interest and costs related to this action."  (Compl., ¶ 101.)

Homecomings initially removed this case on March 14, 2008, but this Court subsequently remanded the case upon Harris's motion because there was no basis to establish that the amount in controversy requirement was satisfied.  *Harris v. Homecomings Financial*, No. 1:08-CV-466-VEH (N.D. Ala. June 6, 2008).  The case continued following remand, and the parties began to discuss the possibility of settlement. (Doc. 5, Ex. G.) During these negotiations, Harris's counsel, Stephen

Jackson, penned a letter dated July 24, 2008 to counsel for Homecomings and

GMAC, Andrew Johnson. (Doc. 1, Ex. C.) This letter discussed Harris's willingness

to settle the case. (Doc. 1, Ex. C.) In relevant part, the letter stated:

> I respectfully disagree with the position that this case does not
> warrant or support a punitive damage claim. In looking back at the
> complaint, we have alleged multiple counts which could support
> punitive damages. The counts for fraud, conversion, and money
> had and received, among others, will all support a verdict for
> punitive damages.
>
> I am unaware of any mitigating facts which would explain or
> justify your client's siphoning to it's [sic] own benefit funds from
> an escrow account in the name of my client. If you can share any
> such facts with me, I will give them due consideration.
>
> However, based on the facts as I understand them so far, there is no
> rational explanation for your client's conduct. Accordingly, my
> client has authorized me to demand $100,000.00 in full and final
> settlement of all claims against your client. This is a multiple of
> his actual damages which I believe to be reasonable and supported
> by the facts. I am of the strong opinion that a jury could be
> persuaded to award a much higher amount at trial.

(Doc. 1, Ex. C.)

On August 22, 2008, and within thirty days of receiving the letter

Homecomings removed the case yet again to federal court. (Notice of Removal, Doc.

1.) The Court's jurisdiction is premised on 28 U.S.C. § 1332, diversity of citizenship.

(Notice of Removal, ¶ 8.) In this most recent appearance before the Court, the Notice

of Removal relies solely upon the letter received from Harris's attorney to establish

that the amount in controversy requirement is satisfied.  (Notice of Removal, ¶¶ 6-7.)

Homecomings maintains that this letter is "other paper" upon which removal can be

based, *see* 28 U.S.C. § 1446(b).  (Notice of Removal, ¶ 3.)

## III.  STANDARD OF REVIEW

Federal courts have a strict duty to exercise the jurisdiction conferred on them

by Congress. *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996). However,

"[f]ederal courts are courts of limited jurisdiction." *Burns v. Windsor Ins. Co.*, 31

F.3d 1092, 1095 (11th Cir.1994). Thus, with respect to cases removed to this court

pursuant to 28 U.S.C. § 1441, the law of the Eleventh Circuit favors remand where

federal jurisdiction is not absolutely clear. "[R]emoval statutes are construed

narrowly; where plaintiff and defendant clash about jurisdiction, uncertainties are

resolved in favor of remand." *Id.*

In establishing the propriety of removal under 28 U.S.C. § 1441, defendants

may rely upon documents such as pleadings, motions, orders, or "other paper."  28

U.S.C. § 1446(b).  "If the jurisdictional amount is either stated clearly on the face of

the documents before the court, or readily deducible from them, then the court has

jurisdiction. If not, the court must remand. Under this approach, jurisdiction is either

evident from the removing documents or remand is appropriate." *Lowery v. Alabama

Power Co.*, 483 F.3d 1184, 1211 (11th Cir. 2007).  When, as here, the damages in the

4

complaint are unspecified, the removing defendant must prove that the amount in controversy exceeds $75,000 by a preponderance of the evidence. *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1357 (11th Cir.1996), *overruled on other grounds by Office Depot v. Cohen*, 204 F.3d 1069 (11th Cir. 2000).

## IV.   ANALYSIS

The Court may consider the demand letter at issue in this case as evidence supporting removal because it constitutes "other paper" for purposes of 28 U.S.C. § 1446(b).  *Lowery*, 483 F.3d at 1213 (11th Cir. 2007) ("What constitutes 'other paper' . . . has been developed judicially. Courts have not articulated a single test for identifying 'other paper,' but numerous types of documents have been held to qualify. They include . . . <u>settlement offers</u> . . . .") (citing *Addo v. Globe Life & Accident Ins. Co.*, 230 F.3d 759, 761-62 (5th Cir.2000)); *see also* 14C CHARLES ALAN WRIGHT, ET AL., FEDERAL PRACTICE AND PROCEDURE § 3732 (1998) ("[C]orrespondence between the parties and their attorneys or between the attorneys usually [is] accepted as [an] 'other paper' source[ ] that initiate [s] a new thirty-day period of removability.").

Regarding the use of "other paper," the *Lowery* court wrote:

> We think it highly questionable whether a defendant could ever file a notice of removal on diversity grounds in a case such as the one before us-where the defendant, the party with the burden of proof, has only bare pleadings containing unspecified damages on which to base its notice-without seriously testing the limits of

compliance with Rule 11. Unlike the typical plaintiff who originally brings a diversity action in federal court, the removing defendant generally will have no direct knowledge of the value of the plaintiff's claims. . . .

   To the extent the defendant does obtain knowledge of the claims' value, it will generally come from the plaintiff herself in the form of information in an "other paper." *See* § 1446(b). This is so because a plaintiff who has chosen to file her case in state court will generally wish to remain beyond the reach of federal jurisdiction, and as a result, she will not assign a specific amount to the damages sought in her complaint. In such a case, like the case before us, the defendant would need an "other paper" to provide the grounds for removal under the second paragraph of § 1446(b). In the absence of such a document, the defendant's appraisal of the amount in controversy may be purely speculative and will ordinarily not provide grounds for his counsel to sign a notice of removal in good faith.

483 F.3d at 1213, n. 63.

   While *Lowery* recognizes that settlement offers may be considered as "other paper" in order to establish the amount in controversy, the Eleventh Circuit has not provided any guidance from which to determine when removal is appropriately based on a settlement offer.  In the absence of binding authority from the Eleventh Circuit, this Court looks to other non-binding courts that have addressed this issue, before looking to the standard provided by the Eleventh Circuit in *Lowery* which, although it has not been applied to facts exactly like the current ones before the court, remains a binding decision.

   **A.    The demand letter is not a reasonable assessment of the value of**

6

Harris's claim.

Courts treating demand letters as "other paper" have recognized that such letters are relevant only if "it appears to reflect a reasonable estimate of the plaintiff's claim." *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 (9th Cir. 2002) (citing *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1097 (11th Cir. 1994)[1]. In *Cohn*, the Ninth Circuit found that a settlement offer satisfied the amount in controversy in a trademark case where damages were unspecified. 281 F.3d at 841. There, the plaintiff's counsel, after filing the complaint, sent a letter to the defendant stating, "[u]pon review of my client's records, and evaluating the value of the good will portion of his business, we believe the mark is worth more than $100,000 to him. Therefore, if your client wishes [to continue using the disputed trademark] my client demands $100,000." *Id.* at 840, n. 2. The court noted that "[the plaintiff] could have argued that the demand was inflated and not an honest assessment of damages, but he made no attempt to disavow his letter or offer contrary evidence. Rather he consistently maintained that his mark is worth more than $100,000." *Id.* at 840. Faced with this evidence, the

---

[1] The Eleventh Circuit in *Burns v. Windsor*, stated that a settlement offer, "while . . . by itself, [is] not determinative, it counts for something." 31 F.3d at 1097. *Burns* is factually distinct from this case. Here, damages are unspecified, unlike *Burns*, where damages were specified at $45,000 and the <u>defendant</u> argued that damages were in actuality in excess of that amount. In *Burns*, the plaintiff offered to settle for <u>less</u> than the jurisdictional amount. The court in *Burns* only concluded that an offer to settle did not establish that the plaintiff's prayer for relief in her complaint was "grossly inconsistent" with her alleged damages and that, therefore, a <u>higher</u> amount was actually in controversy. *Id.*

Court concluded that the case was appropriately removed to federal court, since the amount in controversy was beyond the $75,000 threshold. *Id.* at 841.

Other courts have analyzed settlement letters in the removal context along the same lines as the Ninth Circuit in *Cohn*–by distinguishing between posturing in settlement negotiations and a "reasonable assessment" of damages. *See, e.g.*, *Conder v. Best Value, Inc.*, No. 3:08-CV-411-M, 2008 WL 4601915 at *2 (W.D. Ky. Oct. 15, 2008) ("[B]efore a demand letter can be considered relevant evidence of the amount in controversy, the Court must determine that it reflects a reasonable estimate of the plaintiff's claim.") (internal citations and quotation marks omitted); *Fellows v. E and J Enterprises of Collier County, Inc.*, No. 2:05 CV 561, 2006 WL 314505 at *4 (M.D. Fla., Feb. 9, 2006) (finding that a settlement demand of $500,000 plus $150,000 in attorney's fees established subject matter jurisdiction by a preponderance of the evidence, even though the settlement letter "involve[d] at least a certain degree of posturing"); *Arellano v. Home Depot U.S.A., Inc.*, 245 F. Supp. 2d 1102, 1108 (S.D.Cal. 2003) (finding that a letter constituted "a reasonable estimate of the plaintiff's claim" when the plaintiff had "offered no argument or evidence that the figures in [his] settlement letter are inflated or otherwise unreliable"); *Wang v. Pacific Cycle, Inc.*, 530 F.Supp.2d 1048, 1051 (S.D.Iowa,2008) ("As a general matter, settlement demands are "relevant evidence of the amount in controversy if it appears

to reflect a reasonable estimate of the plaintiff's claim."); *Golden Apple Mgmt. Co. v. GEAC Computers, Inc.*, 990 F. Supp. 1364, 1368 (M.D. Ala. 1998) ("Given the specific information that the letter provides to support its claim for damages, it is apparent that plaintiff was offering a reasonable assessment of the value of its claim"); *Standridge v. Wal-Mart Stores, Inc.*, 945 F.Supp. 252, 256 (N.D.Ga.,1996) ("Plaintiff's demand letter [offering to settle for $75,000], however, was sent to the defendant on May 22, 1996, approximately two weeks before plaintiff filed her case. As such, plaintiff's letter is nothing more than posturing by plaintiff's counsel for settlement purposes and cannot be considered a reliable indicator of the damages plaintiff is seeking.").

Of particular significance to this Court are the decisions in *Golden Apple*, *Fellows*, *Conder*, and *Wang*. These cases, while not binding on the court, serve to establish a framework for this Court to distinguish between reasonable estimates of the value of a case and mere posturing in settlement negotiations.

In *Golden Apple*, 990 F. Supp. 1364, relied upon heavily by both parties in their briefing (*see* Docs. 5 at 16-18; 7 at 3-6; 8 at 2-4), the court addressed the sufficiency of a demand letter to begin the thirty day time frame in which to remove a case. This required the court to determine whether the settlement letter was "other paper" from which GEAC should have ascertained removability. *Id.* at 1368. The

9

letter at issue specifically approximated GEAC's out of pocket costs, noting that damages it could "readily attribute to the defective condition of the GEAC software" amounted to more than  $105,432.  *Id.* at 1368.  This estimate included software costs, consultant costs and personnel costs.  *Id.*  Faced with these facts, the court concluded "[g]iven the specific information that the letter provides to support its claim for damages, it is apparent that [the] plaintiff was offering a reasonable assessment of the value of its claim."  *Id.*  Thus, having removed the case more than thirty days after receiving the demand letter, removal was untimely.  *Id.* at 1369.

In *Fellows v. E and J Enterprises of Collier County, Inc.*, 2006 WL 314505, the district court faced a similar situation.  The plaintiff's counsel penned a settlement letter demanding $500,000, plus an additional $150,000 in attorney fees.  *Id.* at *4.  The defendant relied upon this evidence as his basis for removal.  The plaintiff, in response, argued that the letter was merely posturing in settlement negotiations.  *Id.*  The court concluded that the letter was sufficient to establish the jurisdictional amount.  *Id.*  In relevant part, the letter stated that the plaintiff had been out of work for five months and that she had been impacted in ways that were "unimaginable to most people, particularly in the context of [the plaintiff] fearing that she would be unable to support her critically ill daughter."  *Id.*  The court concluded that "even discounting for normal puffery," the defendant had satisfied its burden as to the

10

jurisdictional amount. *Id.*

Reaching a different result from the courts in *Golden Apple* and *Fellows*, the court in *Wang v. Pacific Cycle, Inc.*, 530 F. Supp. 2d 1048, found that two pre-complaint demand letters did not establish the amount in controversy. The plaintiff initially sent a demand letter requesting more than $95,000 and specifying his past and future medical expenses and noting "[t]his has been a long and painful process [the plaintiff] must still undergo significant oral surgery in which there is also no guarantee of success." *Id.* at 1051. Following a response from the defendant, the plaintiff sent a similar letter demanding $90,000. *Id.* Counsel for the plaintiff, however, indicated that the evidence was merely posturing and was a starting point for settlement negotiations. *Id.* at 1052. Additionally, counsel for the plaintiff attempted to clarify that the plaintiff would not seek recovery in excess of $75,000, and he did not seek recovery for "a laundry list of serious and disabling injuries." *Id.* at 1052. Thus, the court found that the demand letter did not establish "by a preponderance of the evidence that a fact finder could legally conclude that the damages [the plaintiff] suffered are greater than $75,000." *Id.*

Finally, in *Conder*, 2008 WL 4601915, the plaintiff's demand letter sought $95,000 in order to settle its case. *Id.* at *2. The court recognized that "before a demand letter can be considered relevant evidence of the amount in controversy the

Court must first determine that it reflects a reasonable estimate of the plaintiff's claim." *Id.*  Thus, looking to the demand letter, the court identified several specific facts concerning the plaintiff's medical condition in the detailed letter that was apparently more than seven pages long. *Id.* Faced with these facts, the court concluded that the demand letter "reasonably estimates [the plaintff's] pain and suffering, future medical expenses, and impaired earning power. . . ." *Id.* Accordingly, the defendants carried their burden of establishing the amount in controversy. *Id.*

Comparing the above-cited decisions to the facts in the current case, the court finds that Harris's demand letter is not a reasonable estimate of damages, but instead amounts merely to posturing in settlement negotiations.  Unlike the letters in *Golden Apple*, *Fellows*, and *Conder*, the demand letter at issue here does not contain a detailed assessment of damages.  The letter from Harris's counsel instead merely states that "based on the facts as I understand them so far, there is no rational explanation for your client's conduct."  (Doc. 5, Ex. C.)  He further noted, "[a]ccordingly my client has authorized me to demand $100,000 in full and final settlement of all claims against your client.  This is a multiple of his actual damages which I believe to be reasonable and supported by the facts." *Id.*  His statement of a specific figure is not a detailed assessment of actual damages, but is instead an

12

assessment of the value of claims that Harris's counsel believes "could support punitive damages." (Doc. 5, Ex. C.)  Notably, this is a much more tenuous position than the one addressed by the Ninth Circuit in *Cohn*, as the plaintiff there provided the court with an actual valuation of his trademark and did nothing to persuade the court that his valuation was merely posturing. *See* 31 F.3d at 840-841.

Nowhere in this demand letter is there anything approaching the detailed assessment of actual damages as described in *Golden Apple*.  *See* 990 F. Supp. at 1368.  Neither does the letter detail the Plaintiff's suffering, as was the case in *Fellows*, where the court significantly focused on the plaintiff's statements detailing pain and suffering in the settlement letter. *See* 2006 WL 314505 at *4.  The letter is also not nearly as specific as the comparably lengthy demand letter at issue in *Conder*, which specifically listed the plaintiff's medical expenses in a letter that was more than seven pages long.  *See*  2008 WL 4601915 at *2.  Instead, this case is more akin to the facts seen in *Wang*.  Harris has consistently maintained that his offer was only incident to settlement negotiations and was not an actual assessment of his damages.  This offer occurred only after Homecomings had provided its offer of $20,000, and thus was the product of careful posturing in settlement negotiations.

Furthermore, the $100,000 amount represents an estimate of punitive damages that a jury might award.  An award of punitive damages is much more tenuous than

an award of actual damages, which served as the basis for finding that the cases were properly removed in the above-cited decisions.

Thus, applying the above analysis to the current facts, the letter at issue is not a reasonable estimate of the value of the case. Instead, it is merely a demonstration of posturing in settlement negotiations.

**B.    The letter does not amount to a clear and unambiguous statement establishing federal jurisdiction.**

There is also a more fundamental reason for rejecting Homecomings's contention that the settlement letter establishes this Court's jurisdiction. It does not rise to the level of certainty required by *Lowery v. Alabama Power Co.*, 483 F.3d 1184, 1215 (11th Cir. 2007). In *Lowery*, the Eleventh Circuit, while recognizing that "other paper" may serve as the basis for removal under Section 1446(b), further noted that "the documents received by the defendant must contain an unambiguous statement that clearly establishes federal jurisdiction." 483 F.3d at 1215 (emphasis added) (citing *Bosky v. Kroger Texas, LP*, 288 F.3d 208, 211 (5th Cir.2002) (holding that grounds must be "unequivocally clear and certain")). The Court cannot envision any interpretation of *Lowery*'s requirement of an unambiguous statement clearly establishing jurisdiction that would create a standard that is more deferential than the "reasonable assessment" language used in other district courts within this circuit prior

14

to *Lowery* and other courts that are not bound by *Lowery*.  Although the Court does

not have the benefit of any similar case law in this circuit decided after *Lowery*,[2] it is

nevertheless bound by the Eleventh Circuit's admonition to refrain from engaging in

speculation in order to determine the jurisdictional amount.

> Thus, under § 1446(b), in assessing the propriety of removal, the
> court considers the document received by the defendant from the
> plaintiff-be it the initial complaint or a later received paper-and
> determines <u>whether that document and the notice of removal</u>
> <u>unambiguously establish federal jurisdiction</u>. This inquiry is at the
> heart of a case, such as the one before us, in which the plaintiffs
> challenge removal by filing a timely motion to remand under §
> 1447(c). In assessing whether removal was proper in such a case,
> the district court has before it only the limited universe of evidence
> available when the motion to remand is filed-i.e., the notice of
> removal and accompanying documents. If that evidence is
> insufficient to establish that removal was proper or that jurisdiction
> was present, <u>neither the defendants nor the court may speculate</u> in
> an attempt to make up for the notice's failings.

483 F.3d at 1213-1215 (footnotes omitted) (emphasis added).

 Therefore, interpreting the above-discussed cases through the lens of *Lowery*,

---

 [2]  Some district courts within this circuit have addressed settlement letters after *Lowery*
was decided, but the cases concern letters received prior to filing the complaint, where a specific
amount in controversy was claimed in the complaint. *See, e.g., Daniel v. Nationpoint*, No. 2:07-
CV-640-WKW, 2007 WL 4533121 at * (M.D. Ala. Dec. 19, 2007) (noting in a case where the
plaintiff wrote a $100,000 settlement offer before the complaint was filed that "[a] settlement
letter does not establish to a legal certainty that if the plaintiffs prevailed at trial they would
recover more than the jurisdictional amount.").  These cases do not apply because they require
application of the more stringent legal certainty standard, and not the preponderance of the
evidence standard. *See Sierminski v. Transouth Fin. Corp.*, 216 F.3d 945, 947 (11th Cir. 2000)
(explaining that the legal certainty standard applies when a specific jurisdictional amount is
claimed in the complaint and that the preponderance of the evidence standard applies when
damages are unspecified).

which requires a clear and unambiguous statement clearly establishing jurisdiction, the basis for removal is an even weaker one.  The settlement letter simply does not constitute an unambiguous statement that <u>clearly establishes</u> federal jurisdiction.  The crucial paragraph of the settlement letter ultimately falls short of *Lowery*'s admittedly difficult standard.

> However, based on the facts as I understand them so far, there is no rational explanation for your client's conduct.  Accordingly, my client has authorized me to demand $100,000.00 in full and final settlement of all claims against your client.  <u>This is a multiple of his actual damages which I believe to be reasonable and supported by the facts</u>.  I am of the strong opinion that a jury could be persuaded to award a much higher amount at trial.

(Doc. 1, Ex. C) (emphasis added).  This statement came after the parties had been engaged in serious settlement negotiations, and Homecomings had offered only $20,000 to settle the case; this amount was allegedly their only offer.  (Doc. 5, Ex. G.) Homecomings argues that this fact is irrelevant (Doc. 7 at 7) but, taken in context, Homecomings's $20,000 settlement offer reinforces the fact that Harris's own offer was not an unambiguous statement clearly establishing the amount in controversy. Instead, it was a letter that represented wishful thinking more than anything else.  The $100,000 figure was stated only after Harris's counsel discussed his belief that several counts in the complaint "could support punitive damages."  (Doc. 5, Ex. C.)  The figure was also a "multiple of [Harris's] actual damages."  *Id.*

16

Harris's counsel also made the offer "based on the facts as [he understood] them so far." *Id.* Harris's counsel also noted that he is of "the strong opinion" that a jury could award more. *Id.* In short, the $100,000 figure represents only what Harris's counsel believes a jury <u>might</u> award his client in punitive damages, based on his actual damages of $14,928.07. Given the less than specific language in the settlement letter, and the fact that the settlement offer is only an estimate of what Harris's attorney says he believes a punitive damages award could amount to, this Court is unable to conclude that the letter clearly establishes the amount in controversy. Therefore, remand is appropriate.

**C.    The burden of proof in removal cases**.

Finally, the court turns to Homecomings's argument that the plaintiff bears the burden of proof, under *Golden Apple*, of demonstrating that the amount in controversy is less than the jurisdictional threshold. (Doc. 7 at 6 ("The plaintiff has failed to meet his burden of proving to a legal certainty that the amount in controversy is not met.").) Defendant's reliance on *Golden Apple* for this point is misplaced, since "[a] removing defendant bears the burden of proving proper federal jurisdiction." *Leonard v. Enterprise Rent a Car*, 279 F.3d 967, 972 (11th Cir. 2002) (citing *Williams v. Best Buy Co., Inc.*, 269 F.3d 1316, 1319 (11th Cir. 2001). The district court in *Golden Apple* only noted that "[the plaintiff] would have to show that it is a legal certainty that the

amount in controversy is less than the minimum federal jurisdictional requirement" after it concluded that the demand letter at issue was so specific as to establish federal jurisdiction.   990 F. Supp. at 1368.   Besides the fact the Eleventh Circuit has expressly stated on numerous occasions that the defendant bears the burden of proof in establishing the propriety of removal, Homecomings's argument does not fall within the facts of *Golden Apple* because it has not established that the letter amounts to a clear statement that establishes federal jurisdiction.   Thus, even if *Golden Apple* were binding on this court, the letter from Harris's counsel does not fall within the applicable language.

## IV.   CONCLUSION

Because the settlement demand letter does not amount to an unambiguous statement that clearly establishes this Court's jurisdiction, the Homecomings has not met its burden of proving subject matter jurisdiction by a preponderance of the evidence. *Lowery*, 483 F.3d at 1211. Therefore, Harris's Motion to Remand (Doc. 5) is due to be **GRANTED**, and this case is again due to be remanded to state court. An Order consistent with this Memorandum of Opinion will be entered.

**DONE** and **ORDERED** this the 31st day of October, 2008.

_VEHopkins_

**VIRGINIA EMERSON HOPKINS**
United States District Judge

19